UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

MICHAEL BENHAM CARGILL,

Debtor.

Case Number: 20-12261-7

---

## DECISION

This matter is before the Court for determination on the motion of the United States Trustee ("UST") for examination and disgorgement of fees paid by the Debtor to Attorney Richard B. Jacobson and Richard B. Jacobson & Associates, LLC ("Jacobson"). For the reasons below, the motion of the UST is granted and Attorney Jacobson is ordered to disgorge fees of $800.00. Such fees must be repaid to the Debtor within seven business days of the date of this decision.

### BACKGROUND

On September 1, 2020, Michael Benham Cargill ("Cargill" or "Debtor"), represented by Jacobson, filed a voluntary chapter 7. Cargill paid Jacobson $2,000.00 for the filing fee and attorney's fees. There was a written fee agreement that provided for the $2,000.00 as an advance payment. It included no disclosure of an hourly rate.[1]

---

[1] The agreement does provide that representation relating to "motions for relief from stay, adversary proceedings, and/or other contested motions or matters" would be compensated at a rate of $350 per hour.

On October 13, the first meeting of creditors ("341 meeting") was held. The chapter 7 trustee ("Trustee") informed Cargill and Jacobson that the following documents had not been provided as required:

- Debtor's identification confirmation form
- lien confirmation documents
- bank statements, and
- tax returns.

These items were to have been provided before the 341 meeting.

The 341 meeting was adjourned for about three weeks to allow Debtor to provide the missing documents. Since the documents were not provided in that period, the 341 meeting was continued for another three weeks. At this third meeting, the bank statements and lien confirmation documents were still missing. Jacobson told the Trustee the bank statements were sent earlier that day and lien confirmation documents would be forthcoming.

While some portion of the bank statements were submitted by Jacobson, they were incomplete. Extending courtesy to Cargill and Jacobson, the Trustee once again adjourned the 341 meeting to December 14. On December 11, the Trustee informed Jacobson that the bank statements that had been provided were not complete, and based on the limited bank statements provided "the Debtor's schedules failed to disclose and exempt the entirety of the funds in his bank account." ECF No. 37 at ¶ 10.

Yet again, the 341 meeting was adjourned—this time to December 28 to allow amended schedules to be filed and for Cargill to provide complete bank

statements. Neither Cargill nor Jacobson appeared nor were the required documents provided.

On February 3, 2021, the Trustee filed an Order to Show Cause as to why the case should not be dismissed for the failure to provide bank statements, file amended schedules, and appear at the December 28 section 341 meeting. On February 24, Cargill was ordered to provide all outstanding documents by March 8 and to appear at a continued 341 meeting on March 15 or the case would be dismissed.

Cargill filed amended schedules. On March 2 – 140 days after the initial 341 meeting and only after a Court order – complete bank statements were provided. The Trustee concluded the 341 meeting and filed a no asset report. Cargill received his discharge on April 1.

About a month later, the UST filed a motion to examine fees. The motion requested that the Court:

- Find that Richard B. Jacobson & Associates, LLC, has failed to comply with § 329 of the Bankruptcy Code;

- Find that the fees paid to Jacobson are unreasonable pursuant to § 329;

- Order that Jacobson return or waive $800.00 of fees; and

- Order that all fee agreements between Jacobson and Cargill are void and cancel the agreements.

Responding, Jacobson conceded he was informed several times of the deficiencies, that he had ample opportunity to determine whether the bank statements provided were complete, and to object if they were, but he did not

3

do so. He says he wrote to Cargill about the required documents and he sent the Trustee what he received.

Jacobson was ordered to provide time records for the work performed. He did so. The submission lists the following:

| | Date | Description | Time | Amount |
|---|---|---|---|---|
| Pre-petition Invoice Date: 8/13/20 | 8/13/2020 | 1 hour consult B/R | 1.4 | $ 490.00 |
| | 8/24/2020 | Rev/rev B/R docs, C-AD | 0.6 | $ 210.00 |
| | 8/26/2020 | C-CL, Rev/Rev B/R Docs | 1.5 | $ 525.00 |
| Post-petition Invoice Date: 11/17/20 | 11/23/2020 | zoom meeting | 0.4 | $ 140.00 |
| | 11/24/2020 | final review documents | 2.0 | $ 700.00 |
| | | Total | 5.9 | $ 2,065.00 |

The submitted time records contain no indication of any correspondence to Cargill after August 26. Even if there were such communications, they were inadequate. As an experienced practitioner, Jacobson should have known the bank records were incomplete if he had looked at them. The records only contained the first page of each statement. He failed to look. Jacobson had been told of the deficiency many times and on November 23 told the Trustee the bank records had been provided. Once again, whatever was provided was incomplete and, despite being told of the deficiency, it took the filing of an Order to Show Cause and more than three more months before the records were produced.

Jacobson's remaining opposition to the UST's motion is:

1. Fee agreement cancellation and disgorgement are not proper because upon review of his records he would be owed $2,065.

2. There was much work to review matters with Cargill and Cargill was not on top of matters.

3. Every time the Trustee reiterated the document request, Jacobson wrote a letter to Cargill indicating the documents needed to be provided.

4. Jacobson's practice is to have the initial client consultation be 90 minutes so he gets a better understanding of a debtor's finances, while other attorneys have shorter initial client meetings.

5. Bankruptcy lawyers have a right to be paid at a similar rate as non-bankruptcy attorneys.

6. Having put the time and effort in, it is not good practice to allow the UST to "basically proscribe the fee."

7. Allowing such action to occur may deter competent lawyers from bankruptcy work.

The UST counters that Jacobson has exhibited a pattern and practice of failing to properly advise his clients, provide documents to the Trustee, and timely file amended schedules.

### LEGAL STANDARDS

**11 U.S.C. § 329. Debtor's transactions with attorneys**

   (a) Any attorney representing a debtor in a case under this title, or in connection with such a case, whether or not such attorney applies for compensation under this title, shall file with the court a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in

contemplation of or in connection with the case by such attorney, and the source of such compensation.

**(b)** If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

**(1)** the estate, if the property transferred—

**(A)** would have been property of the estate; or

**(B)** was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; or

**(2)** the entity that made such payment.

### 11 U.S.C. § 330. Compensation of officers

**(a)(3)** In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

**(A)** the time spent on such services;

**(B)** the rates charged for such services;

**(C)** whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

**(D)** whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

**(E)** with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

**(F)** whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

**FED. R. BANKR. P. 2017**

### (a) Payment or transfer to attorney before order for relief

On motion by any party in interest or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property by the debtor, made directly or indirectly and in contemplation of the filing of a petition under the Code by or against the debtor or before entry of the order for relief in an involuntary case, to an attorney for services rendered or to be rendered is excessive.

### (b) Payment or transfer to attorney after order for relief

On motion by the debtor, the United States trustee, or on the court's own initiative, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

### DISCUSSION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409. The issue before the Court is payment and reasonableness of professional fees paid to Jacobson. This falls within the parameters of "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). The issue before the Court implicates 11 U.S.C. §§ 329-330 and Fed. R. Bankr. P. 2017.

Although the UST's motion says that non-compliance with 11 U.S.C. §§ 526, 527, and 528 would be another ground to cancel the fee agreement and disgorge Attorney Jacobson's fees, the ultimate relief requested only pertains to reasonableness under section 329. Jacobson has provided a fee agreement and any disclosure discrepancy was corrected and resolved at the hearing on the

UST's motion. As a result, the Court limits this decision to compliance with section 329.

If compensation to debtor's counsel "exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment." 11 U.S.C. § 329(b). Factors considered in determining "reasonableness" are listed in 11 U.S.C. § 330(a)(3).

"Once a question of the reasonableness of counsel's fees is raised by a party in interest bringing a motion, the attorney bears the burden of proving his fee was reasonable." *In re Wood*, 408 B.R. 841, 848 (Bankr. D. Kan. 2009). "Part and parcel of this burden is the responsibility to include sufficient detail in the application to enable the Court to make an informed judgment about the reasonableness of the fees sought and the necessity and benefit of the work performed." *In re Harry Viner, Inc.*, 520 B.R. 268, 275 (Bankr. W.D. Wis. 2014). Jacobson has failed to carry his burden.

The Code requires debtor's attorneys to file "a statement of the compensation paid or agreed to be paid" and "[i]f such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive . . . ." 11 U.S.C. § 329. The Federal Rules of Bankruptcy Procedure allow the court or any party in interest to raise the issue of reasonable compensation. *See* Fed. R. Bankr. P. 2017.

"[I]n considering the 'value' of the services provided to a debtor by an attorney, the Court must consider the quality, not just the quantity, of those

8

services." *In re Dean*, 401 B.R. 917, 923 (Bankr. D. Idaho 2008). While the sum evidenced in the invoices that were submitted does exceed $2000.00, that is not the end of the inquiry. Instead, it appears from what was submitted that between August 26 and November 23, Jacobson did nothing. Presumably, Jacobson took some action after that date because the bank statements were finally provided in March.

As Jacobson argues, performance by competent attorneys is encouraged and benefits the administration of bankruptcy cases. Unfortunately, his performance did not benefit either Cargill or the administration of the case. It would have been a simple matter for Jacobson to review the bank statements provided in November. An experienced attorney would have concluded that providing the first page was insufficient and could have followed up to obtain the complete statements.

The Trustee repeatedly continued the 341 meeting and followed up with Jacobson about the missing documents. All of those efforts by the Trustee and all the delays could have been avoided by simply taking the time to confirm what was missing and what was needed. Jacobson responds he spent "a good deal of work to review matters with Cargill" and that "Cargill was not on top of matters." Yet the record and events suggest that any review with Cargill was unclear or ineffective and that Jacobson was not "on top of matters." If Jacobson reviewed what he sent the Trustee in November, he would have immediately known it was insufficient. Nothing in the record indicates he did

9

anything until after the Order to Show Cause issued and a Court order was entered.

In defending his fees, Jacobson argues it would not be good practice to let the UST proscribe the fees of Cargill's counsel. The UST is not proscribing fees. Instead, the UST has asked this Court to examine Jacobson's fees in this case and to determine whether the fees are reasonable. Determining whether compensation is reasonable, and if not what the remedy is, is not left up to the UST. Those questions are evaluated under the Code and the determinations are made by the Court.

The hourly rate listed in Jacobson's submission is similar to rates charged by similarly situated attorneys in this District. Rate alone is not determinative. Services were not performed competently or within a reasonable time period. Obtaining and providing bank records prior to the section 341 meeting is a routine matter that is important but not complex. A delay of 140 days jeopardized a discharge for Cargill and caused the Trustee and the Court to expend unnecessary time and resources to address Jacobson's inaction or lack of attention to matters.

While based on statements of Jacobson there were services on top of those described in the time records that were submitted, there is no evidence of those services or their reasonableness in the record. In evaluating reasonableness based on time records, courts have opined:

> Because they impede the Court's ability to clearly understand the nature of the work for which compensation is sought, certain billing practices are unacceptable. For instance, bare billing entries for activities like a "telephone call" or a "conference" which do not offer

> any context or explanation for the charges do not enable the Court to assess the necessity of the services rendered.

*In re Harry Viner, Inc.*, 520 B.R. 268, 275 (Bankr. W.D. Wis. 2014). "The absence of an adequate narrative explanation of the necessity of the services rendered is enough to warrant disallowance." *Id. at* 277. Services required by counsel's own clerical or legal errors "do not benefit the Debtors, are not reasonable, and should not be compensated." *In re Ryan*, 517 B.R. 905, 909 (Bankr. E.D. Wis. 2014). Jacobson was allowed to try to establish reasonableness. Time records submitted add up (more or less) to the same amount as the "advanced payment" made by Cargill but that does not prove "reasonableness."[2] But the lack of attention to detail and poor communication by Jacobson imperiled Cargill by putting at risk his opportunity for a fresh start and a discharge.

Jacobson seems to take no responsibility asserting, instead, that he told Cargill what was needed and Cargill either misunderstood or ignored those communications. As an attorney with decades of experience, Jacobson could have determined that Cargill misunderstood by simply looking at what he received. If he didn't do so initially, Jacobson had multiple opportunities to clarify with Cargill the deficiencies. It took 140 days to do so.

Jacobson is correct that bankruptcy lawyers are "to get compensation comparable to what they would receive in nonbankruptcy cases." *In re Taxman Clothing Co.*, 49 F.3d 310, 313 (7th Cir. 1995). Even so, that compensation is

---

[2] The skeletal description of services is sufficient for the Court, based on its experience, to understand the identified services and, for the purpose of this decision, the Court will accept Jacobson's representation the services were for Cargill.

also contingent on compliance with the Code and demonstrating the fees are reasonable. Competence and diligence in representation is part of this requirement. Jacobson has not shown his fees are reasonable. Section 329 provides that if compensation exceeds reasonable value "the court may cancel any such agreement, or order the return of any such payment." 11 U.S.C. § 329(b).

The fee agreement between Cargill and Jacobson is canceled. Jacobson is ordered to disgorge and refund $800.00 to Cargill. Disgorgement of $800.00 gives Jacobson credit for the $335.00 filing fee and compensation for some pre- and post-petition services rendered (despite the lack of information provided). This credits Jacobson for some of the time in the pre-petition meeting, preparation of the pleadings filed at the commencement of the case,[3] and attending a 341 meeting. It also recognizes that there was a failure of communication and attention to detail that caused concerns and potential issues for Cargill, unnecessary time and expense for the Trustee, and unnecessary time for the UST and the Court. Such lack of diligence is not acceptable and not indicative of the skill that experienced attorneys should demonstrate.

## CONCLUSION

For these reasons, the motion of the UST is granted. The appropriate remedy is the cancellation of the Cargill fee agreement and disgorgement of $800.00 by Jacobson. Jacobson shall, within seven days from the date of this

---

[3] ECF Nos. 1-4.

decision, remit and refund to Cargill the sum of $800.00 and shall provide evidence of the same to the UST.

This decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: May 21, 2021

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge